May it please the Court, my name is William Hobson. I represent Mr. Turney in this appeal. He's the appellant. This is an employment discrimination case alleging violations of Title VII and violations of provisions of the ADE. It's a complicated procedural history involving multiple motions to dismiss, ultimately cross motions for summary judgment. The Court, the magistrate judge in this case, Judge, in Flagstaff, I forget, Judge Aspey, granted ultimately the defendant's motion for summary judgment and denied the plaintiff's motion for summary judgment. He did this despite the existence of direct evidence of discriminatory animus by the decision maker. Specifically, there was in the record a series of three comments by Mr. Lim, who was the president of HCE, and the comments bracketed the adverse personnel action. So when he met Mr. Turney, Mr. Lim asked him the question, well, just how old are you? And when Mr. Turney said how old he was, he said, you don't look that old. And then after... Now, did he say, now, just how old are you, or did he say how old are you? My understanding was it was just how old are you. But it's in the record at ER 60, docket 65.3, ER 390, paragraph 9. Okay. That they were clearly age-related remarks. And then after the adverse action, he writes an email indicating something about, I'm glad you're doing something about my old friend. Well, Mr. Lim was not Mr. Turney's friend at all. So that's a third example of direct evidence of discrimination. Now, you know... You know, I guess it depends on how you read it, but it seems to me that that was that it would be hard to even take in the inference, read it as an age remark. Well, it refers to age. Or length of age. It says old. It says old. Association. An association. I mean... And he could have said my long-term friend or my recently encountered friend or my employee who's now my friend. You ever hear people say, it's nice to see you, my recently encountered friend? I mean, it's not really well right off the top. Well, I understand. But coupled with the first two remarks, Your Honors, and the adverse actions taken, I think that makes the – that is direct evidence. And under our cases, primarily Godwin and a whole series of cases at site, Godwin, Blue v. Wendell, Chuang, if you produce any evidence, any direct evidence of discrimination, that takes it out of the summary judgment. McDonnell-Douglas goes away. That satisfies the pretext analysis. Should have gone to trial. You know, I went back and I – it was more or less my memory. I'm now just reading from the declaration. Paragraph 9 on ER 390, Mr. Lim came right in and asked me, quote, how old are you, close quote. Not just how – just how old are you. I stand corrected, Your Honor. And I want to follow up, I think, on the comment that Judge McEwen made as to that slightly odd email. This is an email written to your client's lawyer. Yes, Your Honor. That's a very odd place to find direct evidence of discrimination. And if you read that in context, or I should say read it in context, if you read the whole thing, it's very obvious that Mr. Lim is not a native English speaker. I mean, it's oddly written. And to attach my old friend – to attach to my old friend evidence that this is discrimination, that's hard work. If it were the – Your Honor, if it were the only thing, I would give that to you. But it's in fact – it's a series of three about which – about which there is direct evidence. Now, in addition – The first one is how old are you, you don't look that old. The second one, again – The second one is you don't look that old. Oh, that's all the same. But that's the same – that's the same exchange. It's the same in color, but it's – So we have one exchange, how old are you, he says, you don't look that old. And then we have the email. Anything else? Yes, Your Honor. Well, as to the direct evidence that Mr. Cherney has personal knowledge of. There is, however, other evidence. And that evidence was submitted in the complaint by Mr. Maurer, who was the HR director who left – went to Chicago and filed his own lawsuit. And the complaint was made a part of this record by counsel. And that complaint of Mr. Maurer reports a number of other age-related remarks by Mr. – But as I recollect, the district judge said I have to disregard that because – Well, I understand. And I submit that the district judge was wrong. And I'll tell you why I believe that's the case. There is in this – in this circuit a series of cases. The most recent one is Fonseca v. Cisco that says just because the evidence that's been submitted is in an admissible form, it still can be credited by the court if it can be put in an admissible form for trial. And all that would be required to make the Maurer affidavit admissible at trial would be a verification. And that's a pretty big deal. Well, I understand. But it's also – it's also a complaint filed by Mr. Maurer's lawyer under – under provisions of Rule 11. And it's – Right. But complaints, Rule 11 obligations, and I could hereby declare each of these as true and correct, are two different standards. Well, but they still – they still involve obligations to be truthful. But that's from the attorney. If it were a verified complaint – I understand. That – then I think we would have a different situation. But that's what Fonseca says. If it could be made admissible at trial – And Mr. Maurer – Mr. Maurer would be that – would be that witness at trial. But where was – I read all this and I said, where was Mr. Maurer's declaration? There was apparently a – Mr. Maurer's lawyers did not want to muddy the waters by having anyone else appear. I wasn't part of the case at that point. I understand. But I'm just saying that's what cries out. Where was the deposition? Where was the declaration? There was some agreement, apparently, as I understand it, to have depositions all on three days in Chicago, and that fell apart. I wasn't there. I don't – that's not in the record so far as I know. Right. I mean, that's why when you say – I mean, it would really change the face of summary judgment if you could bring in complaints from related cases and turn those into factual issues. I don't think we have cases that suggest that. But under Godwin, Your Honor, all it takes is one. All it really takes is one. And the simple fact is one age-related remark. And they've said, well, this is – and Judge Aspey said, these are stray remarks. But they were stray remarks. They were remarks made by the decider to Mr. Turney at or about the time of the discriminatory – you know, the adverse personnel action. And it can't escape the attention of the Court that those are – I mean, Godwin says, you know, it takes virtually nothing if there's direct evidence for the case to go to trial. But you have to then show it's a but-for cause, right? Well, that's a different standard. That's an issue after gross. That's an issue for the jury to decide whether that's the – it's the only thing that motivated Mr. Lim's adverse action against Mr. Turney. So I'm gathering you have no direct evidence of national origin discrimination. Other than what's in the complaint. There is material in the EEOC narrative that's referenced, and I just jotted it down. It's referenced at 65-5, 65-6, I think, of the docket. But it is the narrative that Mr. Turney filed with the EEOC describing what he had been told in many cases. So that also is, like the Fonseca analysis, that would require the production of those witnesses to attest to that. And in terms of the age discrimination, correct me if I'm wrong, but his replacement was five years younger? No, his replacement was seven years – seven or eight years younger. He was 59. The replacement was 51, I believe. It was 19 – he's 1949. His replacement was born in 1956. I think they say seven years on the record, but I don't know what their birthdays are. So that raises an interesting question, because I believe you're correct, as you put in your brief, you can't just say, well, because the new hire was over 40, that that somehow erases the potential issue. But I'm not sure that we've really landed on what substantially younger means. Interesting problem. Interesting problem. And I know you've read these cases, for example, I believe in the Seventh Circuit, where they say, well, we're looking there at more like a 10-year gap. And the question is also – maybe the question I want to ask you is, how do you think that should be figured out? And do you think it changes depending on kind of what decade you're looking at in terms of the worker? I don't think there's a per se rule. I mean, there is no per se rule. And I think it's a jury question. So – and particularly as – when we're talking about 50- to 60-year-old persons, that's when the hit happens, it seems to me, in age-related employment discrimination. Right, but they're both over 50. But they're both – they're still – they're not exactly hiring somebody who's – Well, 51 and 57. It's seven years, I think. Right. Well, you know, they've all been contacted by AARP. Yes, they are. They're 50, it seems. I think they do. So maybe they're both partners. They still send you the letters. I think the issue – My point is, in terms of the case law, this is – I don't think I've seen these kind of age – you're talking about people who are over 50 claiming that kind of a gap now. Well, but that's – again, that's a jury question, Your Honor. Maybe not. Finally, I guess I want to briefly talk and maybe reserve a little time. There's other evidence of pretext. And I would point the Court's attention to the following, that when he was terminated, he was told the company is going – intended to go in another direction. And yet, in the litigation, what the HCE does is to articulate all sorts of other reasons why, you know, he was a poor performer. And they do that despite the fact that there's no performance reviews being done, no progressive discipline being done, no job description, in fact, according to my client, that he was never told to open or close dealerships. He, in fact, insists that he was not at a meeting in Denver when these supposed exchanges occurred. Now, I looked at that declaration as to the meeting. The declaration didn't state that the meeting was in Denver. And then he says I wasn't in Denver. So I don't get the significance of I wasn't in Denver. There was a meeting that happened in July of 2008. And this exchange, there is a note in the interchange with Mr. Gillette and Mr. Lim saying that they sat down with him. And I believe it says in Denver. Okay. I missed the part that says they sat down with him in Denver. And I hope I'm not making that up. I probably missed it. Okay. So, and that's part of what he contests. Part of this arises from this issue of these late filed declarations. And I think the Court has, certainly has the latitude to admit late filed documents. But it placed a real burden on Mr. Turney, who was unable at summary judgment to point out that, you know, these are wrong. I bring this thing, this point up. He worked for five years doing great work for them. And then all of a sudden he's a problem after Mr. Lim arrives and makes those remarks. And our jurisprudence in this area says that if the reasons given by the employer are shifting reasons, that doubt is cast on the proper reason that it was created in the context of litigation. And that's the Coleman case and the Lindahl v. Air France case that say those two things. So to the extent that they're shifting explanations for why he was terminated, that's evidence of pretext. I reserve the remainder of my time. Thank you. Good morning, Your Honor. Steve Victor for Hyundai. This is a case about choices. And let's start with the first bad choice that was made by the plaintiff. And that was not to depose anybody in this case and to let all the discovery deadlines go by without taking any discovery. Could have taken Maher's deposition, didn't. Could have taken Lim's deposition. Could have taken Gillette's deposition and so on. But he chose not to. Could have, when the original summary judgment motions were made, put a Rule 56F request in for leave to take these depositions, even though the discovery time had all expired by then, but didn't. So Rule 56 allowed the submission of the declarations we submitted in support of a motion for summary judgment independent of the discovery deadlines that had been imposed, pursuant to a schedule, as the Court would know, that would have been agreed upon by the parties in front of the magistrate judge who was hearing this case in its entirety by agreement of the parties. Next, when the motion for summary judgment was granted, the plaintiff, now appellant, could have appealed, could have filed a Rule 59 motion. This is an issue that they didn't address, and I don't know what level of interest the Court has in it here. We had filed, you know, a motion to dismiss this appeal on the basis that it was improvident or untimely filed. The Court denied the motion, leaving to us the ability to put it back in our answering brief, which we did. So you have a question of, well, he appealed from something. What did he appeal from? Did he appeal from the summary judgment, or did he appeal from the denial of the motion to reconsider, which is an issue I think the Court ought to spend some time with. He clearly appealed from the denial of the motion to reconsider. And why is that important? Because it changes the review standard from de novo, which would be obviously the standard for summary judgment, to abuse of discretion, which would be the standard of review on a denial of a motion to reconsider. And he clearly made a motion to reconsider under Rule 7.2 of our local rules. We know that because he asked for an extension of time, which we agreed to. Beyond the 11 days allowed for, the Court stipulated he could have more time. The problem with that is, is under Federal Rule of Appellate Procedure, Rule 4, filing a motion for reconsideration under local Rule 7.2 did not suspend the time for filing a notice of appeal, as it would have had he made a Rule 59 or a Rule 60 motion. And if I thought of the initial, they first just dismissed the age and race, but it wasn't a filed judgment on all claims, so he couldn't have filed, he couldn't have appealed from that at that time. And then because he has this, he has this order to show cause out to him, it all sort of comes to roost when the Court issues its order on motion for reconsideration. So I'm not sure what he would have appealed before. Maybe you can enlighten me. I think he would have appealed from the – well, I think what he should have done is file a Rule 59 motion. That's what you do when you lose summary judgment and you want to expand your record and stop the time for appeal from running. I recognize that he's got to do that. There's no judgment yet. I mean, you don't have – he might have needed to do that for purposes of just getting more evidence, but if there's no judgment yet, a final judgment from which he can appeal, then I was having trouble. He sent that back down by return mail. Yeah, we would have – we would have kicked it out of here. Yes. If there's no final judgment. Well, I understand the Court's point. I'll move on. The next choice that was made essentially was to – Although you raise an interesting question on the standard of review. Right. I have to give some thought. I think that in either case, whether it's de novo or whether it's abuse of discretion in this case, you arrive at the same place because what are we de novo reviewing? Well, you de novo review the evidence and the law. What evidence is there to review? There is no evidence of national origin discrimination in this case, zero. Mars' unsworn, unverified complaint in the District Court in Illinois is of no worth. It's just a piece of paper that was filed in a court by a lawyer for him. Okay. So we're now down to the remarks. Right. I mean, that's kind of where the case comes down to. Is that enough sufficient direct evidence of pretext to get by summary judgment? No, period. I mean, I could spend ten minutes and six seconds standing here and saying, well, how old are you, and you don't look that old, what does that import? It may well import nothing other than, how old are you, boy, you don't look that old. Well, if age is not a permissible ground for making employment discrimination, that's an odd question. I'm not sure that it's an odd question. I mean, don't we have to crawl into Mr. Lim's head to figure that out? And did not counsel have an opportunity? Well, I have to say, if I were Mr. Lim's lawyer and he came to me and said, should I ask this employee how old he is, I would say, you better not. I think he'd probably give the same advice. Particularly if you're thinking about firing him. But there's no evidence in the record that they were thinking about firing him at that particular time. Well, there's a lot of evidence, and you put it in. Well, they were thinking, well, we put it in. Yeah, you said he was a terrible employee. We were thinking of firing him all along, and he says, how old are you? Well, he was not doing well until this new guy, Lim, came on board, who didn't think he was doing that bad, and then there were these other series of events. But what is significant is that the district court didn't really get to examine all of those issues, didn't bother to examine them, didn't feel a need to examine all of those issues, because it said there's no prima facie case here. You don't even get that close, is what the district court magistrate judge for the district court said. I appreciate your remark about the old friend. That's what came to my mind. On the other hand, in England, you have two 20-year-olds referring to each other as old man this and old man that. It's a colloquialism. And in this case, as you pointed out, spoken by a person, a Korean national, whose first language was not English at all. But we did go further to cite that, well, if we get down into a McDonnell-Douglas analysis and the four tests, well, significantly, who did we replace him with? Well, from the national origin standpoint, we replaced him with an individual named Ron Vogel, which is a good German word that means bird. And he was a Caucasian, and he was 52. And we replaced Mr. Turney, who was, well, 49 and 56 at that time. There's a seven-year age difference when hired, and still seven years. What does that import? Yes, our circuit doesn't have a bright-line test. And yes, the Seventh Circuit has suggested that, well, 10 years is kind of where they're going to look. I don't know that you really can have a bright-line test. But these guys were both, and I say this as someone just receiving my Medicare card this week, these guys were both not young. They were both middle-aged people. So what do we imply by that? From the national origin side, which there is no evidence in the record anyway, we have a Caucasian replacing a Caucasian. And they're both 50s, 52 and 50. Now, 52 is a lot more employable in the national economy than probably getting closer to 60. The difference between 52 and 59? Yeah. Why? I don't see how that, I just don't follow that. You're dealing in a construction industry. Then, if you're dealing with performance issues at all, you are dealing in an industry that was, should have been flying high in Nevada and Arizona in the years between 2003 and 2008. And remember that if we do get down to a circumstantial evidence test and to a McDonnell-Douglas analysis, and if the appellant has come forward far enough so that we shift to the employer the burden to come forward with, all the time leaving the burden of proof on plaintiff, but the employer needs to come forward with the rationale that underlay the employment decision, really what the court says is, is that plausible? Not would we decide it the same way if it was up to us to decide, but is that a plausible set of reasons? And they give, and they cite the fact that there were no dealerships open, new ones, and unsuccessful ones closed. That shouldn't have happened. And they list a series of four or five reasons, which again, counsel made a strategic decision not to explore through discovery. And therefore, we're stuck with the record that was made. And in part, it was a record certainly that we made by resort to declarations, which are permitted under Rule 56, and we did so. Even at the end, with the motion to reconsider that was denied, he simply says, well, I couldn't get a declaration out of this guy because his lawyer in Chicago wouldn't give me one. Well, why do we invent subpoenas? Why do we have provisions in our rules to allow you, in an Arizona case, to easily take a deposit, especially in a federal case, easily take a deposition or five depositions in Chicago? And I think everybody understands that if, in fact, he had taken Marr's deposition and if, in fact, Marr had sworn to and been subject to cross-examination, well, whether he was subject to cross-examination would have been my problem. And just like if the complaint in Illinois had been verified, then I would have taken his deposition. But since I knew it wasn't verified, it's obvious it wasn't verified, and they chose to rely on unverified documents filed in court, no need for me to take his deposition. So you didn't do any discovery either? Didn't need to. Well, the answer would be no. Yes, exactly. Because- No, I understand you have a reason, but you didn't. Normally, you'd oppose the plan if you didn't even do that. Right. So I wouldn't spend a lot of time saying about what they didn't do and they're faulted. I understand it's their burden, it's summary judgment, but the record's a record. Yes. Thank you. Any other questions? Thank you. I apologize, Your Honor, for rushing past my early notes about how we got here. It's an odd case. There is no final judgment in the case, oddly, in the sense – I mean, in the cases I do, the judge directs the clerk to enter judgment, and I can't find that in the docket, but it is the case that on January 7th, when Judge Aspey decided that, he decided the last remaining issue in the case, and counsel took that to mean that that's when the 30 days started to run. Judge Aspey's decision, by the way, says in his denial of motion for reconsideration that he's not going to change his mind and- So you're saying that the judge has no judgment? We don't have jurisdiction. We don't have jurisdiction, and maybe we would have to send it back for administrative fill-in, so to speak. It is an oddity, and I just want to be candid with the Court about that. Why didn't you go ask for a judgment? Well, I just got on the case. I so- Even once we're here, you can see our dilemma. I understand. So is this a consent case, I assume? I would assume so, Your Honor, certainly from the appellant's side. Uh-huh. Your Honor, five quick points. One, his five years of prior employment were – there is no evidence in the record that he's anything other than a producing, competent employee. There's no criticism, no discipline in his record at all. Two, there was no evidence of performance problems prior to the arrival of Lim. The first time you found out about this was at summary judgment? Correct. The third reason is – and I've already talked about the shifting reasons by HCE, which I think suggests a pretext. There are no performance-improved plans or written evaluations. And finally, the age-related remark, we think, under Godwin, takes it out of the McDonnell-Douglas analysis, and it should have been set for trial. To the extent it goes to trial, a witness is going to be called under oath, and we can get to that searching and investigation of the record that the Aiken case suggests. Discrimination is so hard because we're inquiring into secret processes in people's minds, and that's part of the reason that they're so difficult. I thank you, Your Honor, for your attention. Thank you for your argument. The case is here to be submitted for decision.
judges: Thomas, McKeown, Fletcher